# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| JOYCE HARRISON, *as Administrator of the Estate of Adam Harrison, Deceased*, ) ) ) Plaintiff, ) ) v. ) ) WEXFORD HEALTH SOURCES INC., ) MICHAEL DEMPSEY, RANDY ) PFISTER, FRANCIS SORENSON, ) DILLON BLANCHARD, TREVOR ) WILSON, TRAVIS SULLIVAN, ) MICHAEL CARLOCK, DOWNIE ) DRYSDALE, JOHN DOE, BRIAN ) HOWARD, DRAGOSLAV GVODZJAN, & ) BROOK THOMAS ) ) Respondents. ) | Case No. 1:17-cv-01383-JBM |

## ORDER & OPINION

The matter is before the Court on a Motion to Dismiss the Amended Complaint (Doc. 18) filed by Defendants Dillon Blanchard, Michael Carlock, Downie Drysdale, Brian Howard, Francis Sorenson, Travis Sullivan, Trevor Wilson, and Randy Pfister. The motion has been fully briefed. For reasons stated below, the motion is GRANTED. Plaintiff is granted twenty-one days from the date of this order to file a second amended complaint to cure the deficiencies as noted.

### BACKGROUND

The following facts are taken from Plaintiff's first amended complaint and are assumed to be true for purposes of this motion to dismiss. *See Murphy v. Walker*, 51

F.3d 714, 717 (7th Cir. 1995). On November 7, 2015, the decedent, Adam Harrison, committed suicide in his jail cell while he was incarcerated at Pontiac Correctional Center ("Pontiac"). (Doc. 14, ¶¶ 16-17). From 2014 through mid-October 2015, the decedent was prescribed and was taking psychotropic medication prescribed by Defendant Michael Dempsey. *Id.* ¶ 13. Defendant Psychiatrists Dempsey and Dragoslav Gvodzjan provided ongoing psychiatric treatment to the decedent while he was incarcerated; however, his last medical appointment occurred on July 7, 2015. *Id.* ¶¶ 13-14. A follow-up appointment was scheduled eight weeks after the July 7 appointment, but the decedent was not seen by a psychiatrist again prior to his death on November 7, 2015. *Id.* ¶ 14. Dempsey and Gvodzjan consistently failed to keep scheduled appointments with the decedent and allowed his psychotropic medication prescription to lapse without renewal. *Id.* ¶ 15.

During the months leading up to the decedent's unfortunate suicide, the decedent apparently informed multiple people at Pontiac of his need for psychiatric care. In fall 2015, the decedent reported to Defendant Wexford Health Sources, Inc. ("Wexford") concerns about his psychiatric condition and medications, and he made multiple requests to see a psychiatrist. *Id.* ¶ 16. His requests to Wexford went unanswered and his prescription for psychotropic medications lapsed 19 days before his death. *Id.* The decedent was referred to a psychiatrist by the Pontiac Superintendent two days before his death, but the referral was not recorded until two days after the decedent's suicide and the psychiatric evaluation was never scheduled. *Id.* The decedent also told Pontiac Correctional Officers Francis Sorenson, Dillon

2

Blanchard, Trevor Wilson, Travis Sullivan, Michael Carlock, Downie Drysdale, Brian Howard and other John Doe officers of his need for mental health assistance and his fear for his life. *Id.* ¶ 22. His requests for psychiatric care were ignored by the officers. *Id.* Plaintiff also alleges that said officers sexually abused the decedent and taunted him in various ways, such as withholding food and medicine. *Id.* ¶ 23. Plaintiff alleges that Pontiac Warden, Randy Pfister, was aware of the decedent's psychiatric needs and the abuse he underwent, yet did nothing to help. *Id.* ¶¶ 53-54. The decedent ultimately suffocated himself on November 7, 2015, by wrapping a plastic bag, towel, and jumpsuit around his head. *Id.* ¶ 20.

On August 22, 2017, Plaintiff, as the administrator of Adam Harrison's estate, filed the instant civil rights suit against Wexford, Dr. Dempsey, Dr. Gvodzjan, Brook Thomas (the "Medical Defendants"), Sergeant Sorenson, Officer Blanchard, Officer Wilson, Officer Sullivan, Officer Carlock, Officer Drysdale, John Doe officers, Officer Howard (the "Officer Defendants"), and Warden Randy Pfister (collectively referred to as the "Correctional Defendants").

Plaintiff's amended complaint consists of twelve counts: six federal claims and six state law claims. Counts I, II and VI bring federal claims for deliberate indifference to the decedent's serious medical needs in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983 against all defendants. (Doc. 14 at 9-11, 14-15). Counts III-V bring federal § 1983 claims for unconstitutional conditions of confinement, excessive force, and failure to intervene in violation of the Eighth Amendment against the Officer Defendants. *Id.* at 11-14. Counts VII-X allege Illinois

3

medical malpractice claims against the Medical Defendants. *Id.* at 16-20. Counts XI and XII allege Illinois battery and intentional infliction of emotional distress claims, respectively, against the Officer Defendants. *Id.* at 20-22.

On December 14, 2017, the Correctional Defendants filed a Motion to Dismiss the Amended Complaint for failure to state a claim. (Doc. 18). On January 18, 2018, Plaintiff filed a response. (Doc. 22). This matter is ripe for decision.[1]

**LEGAL STANDARD**

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give defendant notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts to "present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a

---

[1] On January 24, 2018, the Medical Defendants filed an answer in the case (Doc. 23) and the claims against those defendants are not at issue in this Order & Opinion.

4

"formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

The Correctional Defendants argue that Plaintiff's amended complaint engages in impermissible group pleading and fails to state a claim upon which relief could be granted. Ordinarily, grouping defendants obscures a plaintiff's allegations against specific defendants, *see Owens v. Evans*, 878 F.3d 559, 561 (7th Cir. 2017), thereby avoiding the pleading requirement to allege facts showing the personal involvement of each defendant. In this case, the Court finds that Plaintiff's claims against the Correctional Defendants do exactly that. Under the circumstances of this case, where the identities of the correctional officers are known to Plaintiff at the pleading stage, to require Plaintiff to also allege the personal involvement of each defendant makes sense and surely is within the knowledge of Plaintiff. For that reason, Plaintiff's claims against the Correctional Defendants cannot proceed as stated.

> To be clear, the Court is aware that many district courts have concluded that:
>
> Rule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer. Such a pleading standard would effectively allow police officers to violate constitutional rights with abandon as long as they ensured they could not be individually identified, even if liability for acting in concert (or for aiding and abetting each other) would otherwise apply.

*Earl v. Howard*, 17-c-0243, 2017 WL 2779797, *3 (N.D. Ill. June 27, 2017) (quoting *Koh v. Graf*, No. 11-c-2605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013)); *see*

5

*also Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir.2009) (noting that such collective pleading is permissible where it i*s* clear that the plaintiff is directing their allegations "at all of the defendants"). But as will be further described below, Plaintiff's complaint is insufficient even in this regard. The majority of Plaintiff's claims are based on the alleged abuse the decedent sustained at the hands of the Officer Defendants. To support her claims, Plaintiff alleges that the Officer Defendants "engaged in conduct that was harmful and detrimental to Adam both physically and emotionally," and that "conduct *included but was not limited to involvement of multiple of said personnel in various types of physical abuse . . . .*" (Doc. 14, ¶ 23) (emphasis added). This kind of pleading provides no clues as to whether Plaintiff asserts that each and every one of the defendants engaged in that conduct or whether Plaintiff instead contends that only some of the defendants performed a given act. *Cf. Brooks*, 578 F.3d at 580 (observing that where a complaint alleges only that "one or more of the Defendants" has engaged in certain conduct, such vague phrasing "does not adequately connect specific defendants to illegal acts"). The remainder of Plaintiff's claims simply lack enough detail for the Court to analyze the Officer Defendants' alleged actions.

I. **Plaintiff's Individual-Capacity § 1983 Claims Against the Correctional Defendants**

Section 1983 imposes liability when a defendant acts under color of state law and violates a plaintiff's rights under the Constitution or laws of the United States. 42 U.S.C. § 1983. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.'" *Vance v. Peters*, 97

F.3d 987, 991 (7th Cir.1996), *cert. denied*, 520 U.S. 1230 (1997) (quoting *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir.1994), *cert. denied*, 513 U.S. 1128 (1995)). It is undisputed that the individual Correctional Defendants were, at all relevant times, acting in their capacities as state actors. The only issue, then, is whether Plaintiff has sufficiently pleaded that the decedent was deprived by each of the Correctional Defendants of a right or an interest secured by the Constitution.

### a. Counts II and VI: Deliberate Indifference to the Decedent's Serious Medical Needs

In Count II, Plaintiff alleges that Sergeant Sorenson, Officer Blanchard, Officer Wilson, Officer Sullivan, Officer Carlock, Officer Drysdale, Officer Howard, and other John Doe correctional officers were deliberately indifferent to Harrison's medical needs by "failing to timely or appropriately act upon or convey verbal and written information about the gravity of Adam Harrison's condition and need for medical and psychiatric care". (Doc. 14, ¶ 37).

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Rodriquez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009)). "To state an Eighth Amendment claim based on deficient medical care, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Id.* The Seventh Circuit has held that suicide qualifies as a serious medical condition. *See Pittman* ex rel. *Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Collins v. Seeman,* 462 F.3d 757, 760 (7th Cir.2006); *Cavalieri v.*

7

*Shepard*, 321 F.3d 616, 623 (7th Cir. 2003); *Matos* ex rel. *Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003). As such, the Court need only determine whether Plaintiff has sufficiently pleaded the second element of her Eighth Amendment claim—deliberate indifference.

"Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez*, 792 F.3d at 776. "Suicide is a 'serious harm' and prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life." *Estate of Novack* ex rel. *Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). "Deliberate indifference to a risk of suicide is present when an official is subjectively 'aware of the significant likelihood that an inmate may imminently seek to take his own life' yet 'fail[s] to take reasonable steps to prevent the inmate from performing the act.'" *Id.* (quoting *Collins*, 462 F.3d at 761). An official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and the official "must also draw the inference." *Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir.1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Circumstantial evidence can be used to establish subjective awareness and deliberate indifference." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 302 (7th Cir. 2010); *see Dixon v. County of Cook*, 819 F.3d 343, 350 (7th Cir. 2016) (when parties argue over the subjective element of a plaintiff's deliberate indifference claim, "close calls" should be decided in the plaintiff's favor at the pleading stage).

Plaintiff alleges that the decedent "spoke and wrote of his need for mental health care and help concerning risk of suicide" to Sergeant Sorenson, Officer Blanchard, Officer Wilson, Officer Sullivan, Officer Carlock, Officer Drysdale, Officer Howard and other John Doe correctional officers. (Doc. 14, ¶ 22). Plaintiff states that "[t]hese verbal and written requests for help were not timely or appropriately acted upon or forwarded to other authorities for action." *Id.* While these allegations are sufficient to state subjective awareness on the Officers' behalf that Harrison might harm himself, *see Sanville v. McCaughtry*, 266 F.3d 724, 737-38 (7th Cir. 2001) ("Particularly if [the decedent] told them that he was suicidal, that alone should have been enough to impute awareness of a substantial risk of suicide.") (internal citation omitted), these allegations are insufficient to show that the individual Officer Defendants were deliberately indifferent to Harrison's medical needs.

Plaintiff's allegations concerning the Officers' alleged deliberate indifference are extremely vague. The allegations do not allege *how each individual officer* failed to timely or appropriately respond. Without any details as to how the officers failed to appropriately or timely respond, the Court has no way to determine if such responses could be characterized as deliberately indifferent. *Cf. Foy v. City of Chi.*, No. 15-3720, 2016 WL 2770880, *5 (N.D. Ill. May 12, 2016) ("Plaintiff allege[d] more than enough specific facts to establish that the officers' conduct constituted" deliberate indifference); *Morris v. Ghosh*, No. 08-4518, 2011 WL 2463548, *3 (N.D. Ill. July 21, 2011) (plaintiff stated deliberate indifference claim where the complaint specifically alleged multiple shortcomings by jail doctor).

As for Plaintiff's claims in Count VI against Warden Pfister, she alleges that Pfister "was aware from multiple sources, including but not limited to the grievance process of Pontiac," "information conveyed to him by staff," and "correspondence forwarded to him by the Sheriff's Office" of the decedent's "mental health condition and risk of suicide, of the unsafe conditions in Adam Harrison's cell and the inadequacy of supervision of him in that cell, and of the physical abuse experienced by Adam Harrison and his suffering as a result." (Doc. 14, ¶ 53). Plaintiff states that Pfister "disregarded and was deliberately indifferent to information concerning Adam Harrison's mental health condition and risk of suicide, the failure to provide necessary medical and psychiatric care to Adam Harrison, the unsafe conditions in Adam Harrison's cell and the inadequacy of supervision of him in that cell, and the physical abuse experienced by Adam Harrison and his suffering as a result." *Id.* ¶ 54.

These allegations against Warden Pfister are likewise extremely vague and are insufficient to implicate the Warden's responsibility to intervene where he has knowledge that his subordinate employees responsible for the decedent's safety have failed to remediate the risk of harm to the decedent. Similarly to Plaintiff's failure to plead deliberate indifference claims against the Officer Defendants with the requisite specificity, Plaintiff has necessarily failed to sufficiently plead a deliberate indifference claim against Warden Pfister for the same reason.

Plaintiff's § 1983 deliberate indifference claims against the Officer Defendants and Warden Pfister[2] are DISMISSED. Plaintiff is granted twenty-one days to file a second amended complaint to cure the deficiencies as noted.

### b. Count III: Unconstitutional Conditions of Confinement

Plaintiff brings a claim against the Officer Defendants for unconstitutional conditions of confinement in violation of the Eighth Amendment. The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement, which includes ensuring that inmates receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832. That Amendment also requires prison officials to take reasonable measures to guarantee the safety of the inmates. *Id.* (internal citations omitted). In a case involving prison conditions of confinement, two elements are required to establish a violation: first, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Id.* at 834. The second element is a subjective one: establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Id.* at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the

---

[2] Count III's Unconstitutional Conditions of Confinement Claim is only alleged against the Officer Defendants, but not against Warden Pfister. Count IV's Excessive Force Claim and Count V's Failure to Intervene Claim is also only alleged against the Officer Defendants, but not against Warden Pfister. For some reason that is unclear to the Court, Plaintiff decided to allege individual-capacity § 1983 claims against Warden Pfister in a completely separate count (Count VI) and Plaintiff did not specify under which theory of liability she was proceeding against Warden Pfister. It appears that Plaintiff is attempting to bring an individual-capacity claim against Warden Pfister under multiple theories of liability. But as described *supra*, the allegations in Count VI against Pfister are extremely vague. If Plaintiff wishes to amend her claims against Pfister, she is advised to specify under which theory or theories of liability she wishes to proceed and to provide more detail of Warden Pfister's involvement under said theory or theories.

official's knowledge of a substantial risk of serious harm from the conditions. *Id.* at 842.

Plaintiff alleges that Sergeant Sorenson, Officer Blanchard, Officer Wilson, Officer Sullivan, Officer Carlock, Officer Drysdale, Officer Howard, and other John Doe correctional officers "were willful, wanton, and reckless in exhibiting a conscious disregard for the safety of" the decedent "in allowing plastic bags and other dangerous and hazardous objects and materials in his cell and failing to keep him in a safe and suitable environment where he could be kept free from injury, harm, and death" despite knowing the decedent "to be emotionally unstable and at a substantial risk of suicide." (Doc. 14, ¶¶ 42-43). Here, too, Plaintiff has failed to allege the specifics of what each Officer Defendant did in connection with the alleged unconstitutional conditions of confinement and this claim is also DISMISSED. Plaintiff is granted twenty-one days to file a second amended complaint to cure the deficiencies as noted.

### c. Counts IV and V: Excessive Force and Failure to Intervene

Plaintiff alleges that the Officer Defendants subjected the decedent to excessive force while he was incarcerated in violation of the Eighth Amendment. Plaintiff further contends that the Officer Defendants "had a realistic opportunity and obligation to intervene for the protection of" the decedent from said use of force by fellow officers. (Doc. 14, ¶ 49).

The Eighth Amendment prohibits prison officials from using excessive physical force against prisoners. *Farmer*, 511 U.S. at 832. In examining an excessive force claim under the Eighth Amendment, the core inquiry is "whether force was applied

in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (internal citation omitted). Furthermore, although significant injury is not required to prevail on an excessive force claim, an excessive force claim cannot be predicated upon a de minimis use of physical force. *Id.* at 619-20. "Thus, not every push or shove by a prison guard violates a prisoner's constitutional rights." *Id.* at 620. In determining whether an injury is more than de minimis, several factors are relevant, "including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Fillmore*, 358 F.3d at 504. The quantum of force required for a constitutional violation is that which is "repugnant to the conscience of mankind." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)). Relatedly, an officer who is present and fails to intervene to prevent other officers from infringing the constitutional rights of citizens is liable under § 1983 "if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Unfortunately, Plaintiff's amended complaint does not contain allegations showing the identity of the specific officers who allegedly used excessive force against the decedent or who failed to intervene to prevent harm to the decedent. Additionally,

13

there must be sufficient allegations describing the underlying circumstances of each event to allow the Court to reasonably infer each defendant's personal involvement and whether a plausible claim is pled. As stated earlier, the Seventh Circuit has held that group pleading is permissible where a Plaintiff brings claims against all Defendants. *Cf. Brooks*, 578 F.3d at 582 (noting that group pleading is permissible where it i*s* clear that the plaintiff is directing her allegations "at all of the defendants"). Here, Plaintiff alleges that the Officer Defendants "engaged in conduct that was harmful and detrimental to Adam both physically and emotionally," and that "conduct included but was not limited to involvement of multiple of said personnel in various types of physical abuse of Adam including abuse of a sexual nature, withholding food, withholding medicine, verbal taunting," providing empty food trays, tampering with his food, threatening him, and encouraging him to inflict harm upon himself. (Doc. 14, ¶ 23). These allegations do not satisfy Rule 8 because such allegations do not provide specifically *which* officers are accused of *what* illegal conduct.

Even had Plaintiff sufficiently pleaded personal involvement of each officer, her claims lack sufficient detail or fail to state a claim for excessive force at all. While withholding food and medicine, providing empty food trays, and tampering with food may constitute violations of the Eighth Amendment's prohibition against unconstitutional conditions of confinement, *see Reed v. McBride*, 178 F.3d 849, 852-54 (7th Cir. 1999), the Court finds no authority to suggest that such actions also serve as a basis for excessive force claims. Furthermore, verbal taunting and threats are

usually insufficient to state claims for excessive force. *See DeWalt,* 224 F.3d at 612 (holding that standing alone, simple verbal harassment does not constitute cruel and unusual punishment); *Harris v. Harrington*, No. 13-893, 2013 WL 5486769, *2 (S.D. Ill. Oct. 2, 2013) ("Verbal threats, without more, will generally not amount to an Eighth Amendment violation," but a credible threat to kill or inflict other physical injury may be sufficient). And Plaintiff has not provided any details about what these alleged threats consisted of, so the Court has no opportunity to further analyze their potential "force," if any.

Sexual abuse, however, can constitute excessive force under the Eighth Amendment. *See Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."); *James v. Baldwin*, No. 17-623, 2017 WL 3057609, *4 (S.D. Ill. July 19, 2017) (declining to dismiss allegations of sexual abuse under Eighth Amendment excessive force claim). But Plaintiff's claim lacks any specificity as to how or when the decedent was sexually abused, especially considering Plaintiff uses the indistinct phrasing "abuse of a sexual nature." The Seventh Circuit interprets *Twombly* and *Iqbal* to require "the plaintiff to provide some specific facts to support the legal claims asserted in the complaint." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (internal citation omitted).

Plaintiff's § 1983 excessive force claims against the Officer Defendants are DISMISSED. Plaintiff's failure to intervene claims, which are predicated on the excessive force claims, are also DISMISSED. Plaintiff is granted twenty-one days to file a second amended complaint and cure the deficiencies as noted.

## II. Plaintiff's State Law Claims Against the Officer Defendants

Plaintiff brings Illinois battery and intentional infliction of emotional distress claims against the Officer Defendants. As will be shown below, both counts fail to state a claim for which relief can be granted.

### a. Count XI: Illinois Battery Claim

Plaintiff alleges that the "above-described harmful, unjustified and offensive contact in inflicting physical abuse" on the decedent "carried out by Defendants Sergeant Sorenson, Officer Blanchard, Officer Wilson, Officer Sullivan, Officer Carlock, Officer Drysdale, Officer Howawrd and other John Doe correctional officers" constituted battery under the common law of Illinois. (Doc. 14, ¶ 77). Plaintiff further states that "said use of excessive force aggravated the mental health condition of" the decedent and "contributed to cause deterioration of his condition and his death." *Id.* ¶ 78. The Court interprets Plaintiff's amended complaint to be alleging that his excessive force claims—sexual abuse, withholding food and medicine, verbal taunting, providing empty food trays, tampering with his food, threatening him and encouraging him to inflict harm upon himself—also constitute battery under Illinois law.

Under Illinois law, battery is committed by an individual if: "'(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" *Flores v. Santiago*, 986 N.E.2d 1216, 1219 (Ill. App. Ct. 1st Dist. 2013) (citing *Bakes v. St. Alexius Med. Ctr.*, 955 N.E. 2d 78, 85-86 (Ill. App. Ct. 1st Dist. 2011) (quoting RESTATEMENT (SECOND) OF TORTS § 13 (1965)). Of the acts allegedly committed by the Officer Defendants, only sexual abuse could possibly constitute a battery under Illinois common law because the remaining acts involve no physical contact with the decedent. *See United States v. Watts*, 798 F.3d 650, 652 (7th Cir. 2015) (noting that Illinois common law battery, as opposed to common law assault, requires injurious or otherwise offensive *physical contact* with the victim) (emphasis added); *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011) (same). For the same reason Plaintiff has failed to state an excessive force claim for sexual abuse, Plaintiff has failed to state a battery claim for sexual abuse. *See, e.g.*, *McGovern v. Pacetti*, No. 01-3772, 2002 WL 122314, *3 (N.D. Ill. Jan. 29, 2002) (analyzing § 1983 excessive force and battery claims together). The Court has no details from which to determine what kind of abuse the decedent allegedly underwent, *i.e.*, whether the elements of Illinois common law battery are satisfied. *Cf. Hively*, 695 F.3d at 643 ("Indeed, sexual offenses need not involve *any* touching . . . .).

Plaintiff's Illinois common law battery claims against the Officer Defendants are DISMISSED. Plaintiff is granted twenty-one days to file a second amended complaint and cure the deficiencies as noted.

### b. Count XII: Illinois Intentional Infliction of Emotional Distress

Plaintiff alleges that the "above-described harmful, unjustified and offensive conduct with respect to" the decedent "carried out by Defendants Sergeant Sorenson, Officer Blanchard, Officer Wilson, Officer Sullivan, Officer Carlock, Officer Drysdale, Officer Howard and other John Doe correctional officers" "was extreme and outrageous and was intended to cause emotional distress or engaged in with reckless or conscious disregard for the probability of causing emotional distress." (Doc. 14, ¶ 80).

In order to sustain a claim for intentional infliction of emotional distress under Illinois law, the following elements must be alleged: "(1) the conduct involved must be extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress." *Hegy v. Cmty. Counseling Ctr. of Fox Valley*, 158 F.Supp.2d 892, 897 (N.D. Ill. 2001) (citing *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)). "In order for conduct to be deemed outrageous, it must "go beyond all bounds of human decency." *Id.* at 898 (citing *Honaker*, 256 F.3d at 490). "'Mere insults, indignities, threats, annoyances, petty oppressions, or trivialities' do not rise to the level of intentional infliction of emotional distress." *Id.* (quoting *Oates v. Disc*

*Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997)). As explained earlier, group pleading in this case obscures Plaintiff's allegations against the individual defendants and operates to circumvent the pleading requirement that Plaintiff show the personal involvement of each defendant. For this reason alone, this claim must also be dismissed.

Additionally, the Court has already determined that Plaintiff has not pleaded with sufficient particularity that the decedent underwent sexual abuse. The only remaining allegations in support of an IIED claim are: withholding food and medicine, verbal taunting, providing empty food trays, tampering with his food, threatening him and encouraging the decedent to inflict harm upon himself. These allegations are likewise insufficient to state an IIED claim. Plaintiff does not allege the frequency of the aforementioned conduct or when it allegedly happened, *i.e.*, whether such conduct was near-in-time to when the decedent committed suicide. Single instances of the aforementioned conduct would not rise to the level of severity and outrageousness required for Plaintiff to maintain her claim. *See Lara v. Diamond Detective Agency*, 412 F.Supp.2d 894, 902 (N.D. Ill. 2006) (finding that single instances of bad conduct were not sufficiently severe or outrageous); *see also Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (Under Illinois law, "[l]iability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency.").

Plaintiff's Illinois IIED claims against the Officer Defendants are DISMISSED. Plaintiff has twenty-one days from the date of this order to file a second amended complaint and cure the deficiencies as noted.[3]

## CONCLUSION

The Correctional Defendants' Motion to Dismiss (Doc. 18) is GRANTED. Plaintiff is granted leave to file a second amended complaint within twenty-one days of the date of this order to cure the deficiencies as noted. Plaintiff's second amended complaint will replace Plaintiff's amended complaint in its entirety. Accordingly, the amended complaint must contain all allegations against all Defendants. Piecemeal amendments are not accepted.

Entered this 1st day of February, 2018.

s/ Joe B. McDade  
JOE BILLY McDADE  
United States Senior District Judge

---

[3] The Court recommends that any further amended complaints filed by Plaintiff contain specific factual allegations *under each count.* Under many of the counts in Plaintiff's current amended complaint, Plaintiff merely references "above-mentioned conduct" to support her claims. In other words, Plaintiff expects the Court to peruse the amended complaint in order to determine which allegations in the facts section could possibly support Plaintiff's claims. The Court can more easily and accurately analyze claims that contain specific facts under each count.