E-FILED
Thursday, 05 December, 2019  11:39:22 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Joyce Harrison, as independent administrator of the Estate of Adam Harrison, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 17 cv 1383 |
| Wexford Health Sources, Inc., Michael Dempsey, MD, Dragoslav Gvozdjan, MD, and Brook Thomas, | ) ) ) ) | |
| Defendants. | ) ) | JURY DEMAND |

**SECOND AMENDED COMPLAINT AT LAW**

Plaintiff, Joyce Harrison, as Independent Administrator of the Estate of Adam Harrison, deceased, for her Second Amended Complaint at Law against Defendants Wexford Health Sources, Inc., Michael Dempsey, MD, Dragoslav Gvozdjan, MD, and Brook Thomas, states as follows:

**Parties**

1.      Adam Harrison was an inmate at the Pontiac Correctional Center in Pontiac, Illinois, in the Central District of Illinois at the time of his death on November 7, 2015. Plaintiff Joyce Harrison is Adam Harrison's mother and has been appointed as Independent Administrator of the Estate of Adam Harrison.  Adam Harrison's next-of-kin at the time of his death were his mother Joyce Harrison and his sister Marie Garcia.

2.      At all times material to this complaint, Defendant Wexford Health Sources, Inc. (hereinafter "Wexford"), a Pennsylvania corporation, doing business in Illinois, had a contract with the Illinois Department of Corrections (hereinafter "IDOC") to provide medical, mental health and psychiatric care to those incarcerated in the IDOC system, including at Pontiac

Correctional Center. Defendant Wexford was responsible for providing all medical, mental health and psychiatric services to inmates, including but not limited to: the assessment of need for services; provision of care and treatment services for all health care needs; and for hiring, training, supervision and conduct of all health care providers at Pontiac Correctional Center. At all relevant times, Wexford, by and through its employees and agents, was acting under color of law and its agents and employees were acting under color of law and in the course and scope of their employment.

3.      Defendant Wexford was responsible for the establishment and implementation of the policies, procedures, practices, and customs for provision of medical, mental health and psychiatric care at Pontiac Correctional Center at all relevant times, as well as for the acts and omissions in provision of medical, mental health and psychiatric services, challenged by this suit.

4.      At all times material to this complaint, Defendant, Michael Dempsey, MD (hereinafter "Dempsey"), and Dragoslav Gvozdjan, MD (hereinafter "Gvozdjan"), were psychiatrists who were responsible for patient mental health and psychiatric care at Pontiac Correctional Center and were employees of Defendant Wexford; also, at all times material to this complaint Brook Thomas (hereinafter "Thomas") was a Licensed Clinical Social Worker and Mental Health Unit Director at Pontiac Correctional Center and was an employee of Defendant Wexford. Defendants Dempsey and Gvozdjan were responsible for carrying out the policies and procedures for mental health care then in effect at Pontiac Correctional Center and for provision of appropriate psychiatric and medical care to inmates as evaluating and treating psychiatrists, for prescribing medications and monitoring medication status of patients, and for the timely response to the mental health care needs of inmates. Defendant Thomas was responsible for carrying out the policies and procedures for mental health care then in effect at Pontiac Correctional Center and for overseeing and ensuring that appropriate mental health and

psychiatric care was provided to inmates, for seeing that medication status of psychiatric patients is monitored and medications are appropriately prescribed, for providing therapy, for assessing suicide risk, and for the timely response to the mental health care needs of patients.  At all times material to this action Adam Harrison was a prisoner subject to the care and treatment provided and overseen by Defendants Dempsey, Gvozdjan and Thomas.

### Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over the claims raised in this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367, to consider the state law claims alleged herein.

6.      Venue is appropriate in the Central District of Illinois under 28 U.S.C. § 1391 as Plaintiff's decedent resided in the Central District of Illinois, Defendants do business in the Central District of Illinois, and the acts and omissions giving rise to the claims occurred in the Central District of Illinois.

### Factual Background

7.      As a threshold matter, Plaintiff notes that Adam Harrison died while incarcerated and, as such, Plaintiff does not have personal information regarding the circumstances of his death. This information is notably within the control of Wexford Health Sources, Inc., and the Illinois Department of Corrections and their employees. Courts have referred to this situation as an "informational disadvantage," and Plaintiff relies upon information obtained from Wexford Health Sources, Inc., and the Illinois Department of Corrections and their employees.

8.      Throughout the course of Adam Harrison's incarceration at Pontiac Correctional Center, he was known by staff and medical personnel to be at risk of suicide and was placed on suicide precautions multiple times.

9. On and prior to November 7, 2015, Adam Harrison was an inmate at Pontiac Correctional Center and a patient of Wexford relying for care upon medical and mental health care personnel including Defendant Dempsey, Defendant Gvozdjan and Defendant Thomas. During 2014 and through to mid-October 2015, Adam Harrison was prescribed and was receiving psychotropic medication prescribed by Defendant Dempsey. As Adam's psychiatrists, it was Defendant Dempsey's and Dr. Gvozdjan's responsibility to provide ongoing psychiatric evaluation and care for Adam and monitor his psychiatric condition and status with respect to prescribed psychotropic medications.

10. On information and belief, Adam Harrison's last medical appointment where he was seen by Defendant Dempsey was July 7, 2015. Dr. Dempsey's records at that time reflect that Adam was scheduled to have a follow-up psychiatric appointment eight weeks thereafter. Notwithstanding that direction, Adam was not seen by a psychiatrist again prior to his death on November 7, 2015.

11. From the late summer of 2015 through to the time of Adam Harrison's death, Defendant Dempsey and Defendant Gvozdjan failed to have a follow-up psychiatric appointment as prescribed, failed to keep appointments that were scheduled with Adam Harrison to monitor his status while on the psychotropic medication, failed to keep any rescheduled appointment, and allowed the psychotropic medication prescription to lapse without renewal or evaluation prior to Adam's death. Defendant Thomas did not take appropriate steps as Mental Health Unit Director and Adam's designated Licensed Clinical Social Worker to see that Adam was evaluated and treated by a psychiatrist in response to his multiple requests, that his medication status was monitored and addressed, and that multiple risk factors were assessed and addressed in the course of his mental health treatment.

12.     Adam Harrison was assigned to Defendant Thomas's mental health caseload as of early August, 2015. Defendant Thomas failed to provide oversight and coordination of care for Adam as a patient on her caseload, and she had no therapy sessions with Adam from the time he was assigned to her caseload to the time of his death. Defendant Thomas's suicide assessments of Adam Harrison on October 5, 2015 November 1, 2015 were cursory, incomplete and inadequate. Defendant Thomas failed to follow suicide risk assessment protocol consistent with the IDOC Mental Health Protocol Manual in performing suicide risk assessments for Adam on October 5, 2015 and November 1, 2015; she did not review Adam's records, and did not properly consider his situational and precipitating factors, his history of past suicide attempts, his mental instability and lack of medication, and his anxiety and concern about his parole status.

13.     During the late summer and fall of 2015, Adam Harrison reported to Wexford personnel concerns about his psychiatric condition and medications and requested multiple times to see a psychiatrist concerning those issues. He was not seen by a psychiatrist during that time and his psychotropic medication prescription was allowed to lapse before his death without renewal or psychiatric assessment or evaluation. Adam Harrison had two appointments scheduled with Dr. Gvozdjan in October 2015 as his prescription of Buspar was running out and after it had run out; those appointments were not kept and no steps were undertaken by Dr. Gvozdjan to provide for continuation of psychotropic medications or planning for discontinuation of such medications or to see that Adam's psychiatric needs were being met. After Adam's prescription lapsed, he was without his prescribed psychotropic medication for 19 days prior to his death on November 7, 2015. Two days prior to his death, Adam was referred to Defendant Thomas by a Superintendent at Pontiac Correctional Center because he noted uncharacteristic anxiety. Adam requested that Ms. Thomas get him psychiatric care because his medications were stopped; a referral to a psychiatrist was deemed necessary and Adam was told

that an appointment would be made; however, the encounter was not recorded until two days after Adam's death and the psychiatric evaluation was not scheduled prior to his death.

14.     On and prior to November 7, 2015, Adam Harrison was an inmate in North House, cell #530, at the Pontiac Correctional Center.

15.     On the evening of November 7, 2015, Adam Harrison's dead body was reportedly found in his cell. For Adam Harrison, November 7, 2015, was the date of a significant milestone, the anniversary of the death of his father, Leonard Harrison.

16.     The autopsy report of Dr. Scott Denton on behalf of the Livingston County Coroner's Office identifies the cause of death as being attributable to "suffocation due to a plastic bag, towel, and jumpsuit wrapped around the head."

17.     As of early November 2015, Adam Harrison was approaching his targeted release date and efforts were underway to make arrangements for him to be able to be released.

COUNT I

(Deliberate Indifference to Serious Mental Health Needs by Wexford Health Sources, Inc.,
and Dr. Michael Dempsey, Dr Dragoslav Gvozdjan, and Brook Thomas
in Violation of the Eighth Amendment)

18.     Plaintiff repeats and re-alleges paragraphs 1 through 17 as if fully recited herein.

19.     At all relevant times, Adam Harrison had a constitutionally protected right under the Eighth Amendment to the U.S. Constitution to receive needed care while incarcerated within the IDOC, and to have his mental health issues timely and properly assessed and treated.

20.     At all relevant times, Dr. Michael Dempsey, Dr. Dragoslav Gvozdjan and Brook Thomas were working at Pontiac Correctional Center, were employed by the Defendant Wexford Health Sources, Inc., and were acting within the scope of their employment and under color of law.

21.    Defendant Wexford Health Sources, Inc., and its employees, including but not limited to Dr. Michael Dempsey, Dr. Dragoslav Gvozdjan and Brook Thomas knew at all times material to this action that there was a substantial risk of suicide by Adam Harrison, a mental health and psychiatric patient with a history of suicidality, and that such risk was exacerbated by failure to provide psychiatric monitoring of his condition and status, failure to monitor his status with respect to psychotropic medications, failure to classify him as permanent Seriously Mentally Ill, failure to conduct proper suicide assessments, failure to respond to repeated requests for psychiatric care, failure to provide therapy, failure to timely document and follow up on inmate/patient interactions, and discontinuation of psychotropic medications without psychiatric monitoring and assessment and planning.

22.    The conduct of Defendants Wexford Health Sources, Inc., Dr. Michael Dempsey Dr. Dragoslav Gvozdjan and Brook Thomas described above demonstrated deliberate indifference to Adam Harrison's mental, medical and psychiatric health needs and violated the rights of Plaintiff's decedent to be free of cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.

23.    As a direct and proximate result of the deliberate indifference to Adam Harrison's mental health needs as described above, Plaintiff's decedent, Adam Harrison, experienced injuries and suffering. Deliberate indifference to the Adam Harrison's mental health needs as described above was a proximate cause of the death of Plaintiff's decedent, Adam Harrison.

WHEREFORE, Plaintiff requests that judgment be entered for the Estate of Adam Harrison and against Defendants Wexford Health Sources, Inc., and Dr. Michael Dempsey, Dr. Dragoslav Gvozdjan and Brook Thomas awarding damages for loss of life, conscious pain and suffering, additional available compensatory damages, punitive damages, reasonable attorney fees and costs, and such further relief as this Court deems just.

COUNT II

(Illinois State Law Medical Malpractice Claim Against Defendant Wexford Health Sources, Inc.)

24.     Plaintiff repeats and re-alleges paragraphs 1 through 23 as if fully recited herein.

25.     Wexford Health Sources, Inc., and its employees and agents had a duty to Adam Harrison to exercise reasonable care and comply with the standard of care in medical and psychiatric evaluation, care and treatment of Adam Harrison.

26.     In support of the medical malpractice claims against Wexford Health Sources, Inc., Plaintiff attaches hereto an Attorney Affidavit of merit in compliance with 735 ILCS 5/2-622, Ex. 1, and an accompanying Medical Report, Ex. 2.

27.     Wexford Health Sources, Inc., by and through its employees, and agents, including but not limited to, LCSW Brook Thomas, Dr. Dragoslav Gvozdjan, and Dr. Michael Dempsey, breached its duty to Adam Harrison to exercise reasonable care in accordance with the standard of care in one or more of the following ways:

A.     As to LCSW Brook Thomas:

(1)     Failed to manage care of a patient such that he was receiving necessary psychiatric evaluation and treatment;

(2)     Failed to monitor psychotropic drug prescriptions and ensure that such prescriptions are not discontinued without involvement of a psychiatrist in evaluation, counseling and planning;

(3)     Failed to conduct proper suicide risk assessments of Adam Harrison;

(4)     Failed to take actions necessary for the protection of Adam Harrison commensurate with his suicide risk factors;

(5)     Failed to respond to Adam Harrison's repeated requests to see a psychiatrist by arranging for a psychiatrist appointment;

(6)     Failed to provide therapy for Adam Harrison; and

(7)     Failed to document and provide for follow-up psychiatric care deemed necessary and for which Adam was told he would be referred two days

prior to his death.

B.    As to Dr. Dragoslav Gvozdjan:

(1)    Failed to properly manage the condition and care of a patient for whom
he was responsible to provide psychiatric care;

(2)    Allowed discontinuation of a patient's psychotropic medication without
taking appropriate steps to ensure either continuation of medication or
evaluation for prescription of alternative appropriate medication;

(3)    Failed to take responsibility for assessment and monitoring of the
condition of a psychiatric patient;

(4)    Failed to see a patient for scheduled psychiatric appointments and to
exercise clinical judgment in rescheduling; and

(5)    Failed to appropriately respond to requests for services by a psychiatric
patient for whom he was responsible to provide psychiatric care.

C.    As to Dr. Michael Dempsey

(1)    Failed to properly manage the condition and care of a psychiatric patient;

(2)    Failed to properly designate Adam Harrison as Seriously Mentally Ill
commensurate with his condition and psychiatric care needs;

(3)    Failed to provide psychiatric evaluation necessary for continuation or
modification of prescribed psychotropic medication; and

(4)    Failed to appropriately monitor the condition of a patient under his
psychiatric care, for whom he had prescribed psychotropic medication.

28.    One or more of the foregoing breaches of the standard of care was a proximate

cause of injuries to Adam Harrison and his death on November 7, 2015.

WHEREFORE, Plaintiff requests that judgment be entered for the Estate of Adam

Harrison and against Defendants Wexford Health Sources, Inc., awarding damages under the

Illinois Survival Act, 755 ILCS § 5/27-6, for injuries to Adam Harrison including but not limited

to pain and suffering, and emotional distress, as well as damages under the Illinois Wrongful

Death Act, 740 ILCS § 180/1, for loss of society, grief and sorrow, costs and such further relief as this Court deems just.

## COUNT III

**(Illinois State Law Medical Malpractice Claim Against Defendant Dr. Michael Dempsey)**

29.     Plaintiff repeats and re-alleges paragraphs 1 through 23 as if fully recited herein.

30.     Dr. Michael Dempsey had a duty to Adam Harrison to exercise reasonable care and comply with the standard of care in medical and psychiatric evaluation, care and treatment of Adam Harrison.

31.     In support of the medical malpractice claims against Dr. Michael Dempsey, Plaintiff attaches hereto an Attorney Affidavit of merit in compliance with 735 ILCS 5/2-622, Ex. 3, and an accompanying Medical Report, Ex. 4.

32.     Dr. Michael Dempsey breached his duty to Adam Harrison to exercise reasonable care in accordance with the standard of care in one or more of the following ways:

A.     Failed to properly manage the condition and care of a psychiatric patient;

B.     Failed to properly designate Adam Harrison as Seriously Mentally Ill commensurate with his condition and psychiatric care needs;

C.     Failed to provide psychiatric evaluation necessary for continuation or modification of prescribed psychotropic medication; and

D.     Failed to appropriately monitor the condition of a patient under his psychiatric care, for whom he had prescribed psychotropic medication.

33.     One or more of the foregoing breaches of the standard of care was a proximate cause of injuries to Adam Harrison and his death on November 7, 2015.

WHEREFORE, Plaintiff requests that judgment be entered for the Estate of Adam Harrison and against Dr. Michael Dempsey awarding damages under the Illinois Survival Act, 755 ILCS § 5/27-6, for injuries to Adam Harrison including but not limited to pain and suffering,

and emotional distress, as well as damages under the Illinois Wrongful Death Act, 740 ILCS §

180/1, for loss of society, grief and sorrow, costs and such further relief as this Court deems just.

COUNT IV

(Illinois State Law Medical Malpractice Claim Against Defendant Dr. Dragoslav Gvozdjan)

34.     Plaintiff repeats and re-alleges paragraphs 1 through 23 as if fully recited herein.

35.     Dr. Dragoslav Gvozdjan had a duty to Adam Harrison to exercise reasonable care

and comply with the standard of care in medical and psychiatric evaluation, care and treatment of

Adam Harrison.

36.     In support of the medical malpractice claims against Dr. Dragoslav Gvozdjan,

Plaintiff attaches hereto an Attorney Affidavit of merit in compliance with 735 ILCS 5/2-622,

Ex. 5, and an accompanying Medical Report, Ex. 6.

37.     Dr. Dragoslav Gvozdjan breached his duty to Adam Harrison to exercise

reasonable care in accordance with the standard of care in one or more of the following ways:

A.     Failed to properly manage the condition and care of a patient for whom
he was responsible to provide psychiatric care;

B.     Allowed discontinuation of a patient's psychotropic medication without
taking appropriate steps to ensure either continuation of medication or
evaluation for prescription of alternative appropriate medication;

C.     Failed to take responsibility for assessment and monitoring of the condition
of a psychiatric patient;

D.     Failed to see a patient for scheduled psychiatric appointments and to
exercise clinical judgment in rescheduling; and

E.     Failed to appropriately respond to requests for services by a psychiatric
patient for whom he was responsible to provide psychiatric care.

38.     One or more of the foregoing breaches of the standard of care was a proximate

cause of injuries to Adam Harrison and his death on November 7, 2015.

WHEREFORE, Plaintiff requests that judgment be entered for the Estate of Adam Harrison and against Dr. Dragoslav Gvozdjan awarding damages under the Illinois Survival Act, 755 ILCS § 5/27-6, for injuries to Adam Harrison including but not limited to pain and suffering, and emotional distress, as well as damages under the Illinois Wrongful Death Act, 740 ILCS § 180/1, for loss of society, grief and sorrow, costs and such further relief as this Court deems just.

COUNT V

(Illinois State Law Medical Malpractice Claim Against Defendant Brook Thomas)

39.     Plaintiff repeats and re-alleges paragraphs 1 through 23 as if fully recited herein.

40.     Medical Unit Director and Licensed Clinical Social Worker Brook Thomas had a duty to Adam Harrison to exercise reasonable care and comply with the standard of care in providing and managing care and treatment of Adam Harrison.

41.      In support of the medical malpractice claims against Brook Thomas, Plaintiff attaches hereto an Attorney Affidavit of merit in compliance with 735 ILCS 5/2-622, Ex. 7, and an accompanying Medical Report, Ex. 8.

42.      Brook Thomas breached her duty to Adam Harrison to exercise reasonable care in accordance with the standard of care in one or more of the following ways:

A.     Failed to manage care of a patient such that he was receiving necessary psychiatric evaluation and treatment;

B.     Failed to monitor psychotropic drug prescriptions and ensure that such prescriptions are not discontinued without involvement of a psychiatrist in evaluation, counseling and planning;

C.     Failed to conduct proper suicide risk assessments of Adam Harrison;

D.     Failed to take actions necessary for the protection of Adam Harrison commensurate with his suicide risk factors;

E.     Failed to respond to Adam Harrison's repeated requests to see a psychiatrist by arranging for a psychiatrist appointment;

F.      Failed to provide therapy for Adam Harrison; and

G.      Failed to document and provide for follow-up psychiatric care deemed
        necessary and for which Adam was told he would be referred two days
        prior to his death.

43.     One or more of the foregoing breaches of the standard of care was a proximate

cause of injuries to Adam Harrison and his death on November 7, 2015.

WHEREFORE, Plaintiff requests that judgment be entered for the Estate of Adam

Harrison and against Brook Thomas awarding damages under the Illinois Survival Act, 755

ILCS § 5/27-6, for injuries to Adam Harrison including but not limited to pain and suffering, and

emotional distress, as well as damages under the Illinois Wrongful Death Act, 740 ILCS § 180/1,

for loss of society, grief and sorrow, costs and such further relief as this Court deems just.

**JURY DEMAND**

The undersigned, an attorney for Plaintiff, demands a jury trial on all counts that may be

tried to a jury.

Respectfully submitted,

/s Mark Parts
Mark Parts
Faith H. Spencer
Parts & Spencer, Ltd.
130 North Garland Court, #2005
Chicago, IL  60602
312-920-0990
mparts@pslegal.net
Illinois Atty. No.:  6203617

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

Joyce Harrison, as independent administrator of )
the Estate of Adam Harrison, )
)
      Plaintiff, )
)
    v. ) 17 cv 1383
)
Wexford Health Sources, Inc., Michael )
Dempsey, MD, et al., )
) JURY DEMAND
      Defendants. )

### ATTORNEY AFFIDAVIT
### Pursuant to 735 ILCS 5/2-622

    Mark Parts, an attorney for the Plaintiff, having been sworn upon oath, states as follows:

    1.    I have consulted and reviewed the facts of this case with a physician who is licensed to practice medicine in all its branches, who has maintained an active psychiatry practice and has practiced in the field within the past six years, and who has been practicing medicine for more than ten years. I reasonably believe that this physician is knowledgeable as to the relevant issues involved in this action, has practiced within the last six years in the medical field involved in this case, and is qualified by experience and training to render opinions herein.

    2.    The reviewing health professional has determined, as reflected in a written report, after review of medical records and other relevant material pertaining to this case, that there is a reasonable and meritorious cause for the filing of this Second Amended Complaint against Wexford Health Sources, Inc.

    3.    I have concluded, on the basis of the health professional's review and consultation, that there is reasonable and meritorious cause for the filing the Second Amended Complaint in this lawsuit against Wexford Health Sources, Inc.

    4.    A copy of the written report of the reviewing health professional referred to herein is attached to this affidavit.

    FURTHER AFFIANT SAYETH NOT.

SUBSCRIBED and SWORN before me
this _13ᵗʰ_ day of _November_, 2019.

_____
NOTARY PUBLIC

OFFICIAL SEAL
FAITH SPENCER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/15/21

Exhibit # 1

## MEDICAL REPORT

I am a physician licensed to practice medicine in the State of Missouri and I have been practicing medicine for more than 10 years.  Since completing a residency in psychiatry in 1977, I have maintained an active psychiatry practice, and accordingly I have practiced within the field of psychiatry within the last 6 years.

I have reviewed records of IDOC, Pontiac Correctional Center ("Pontiac"), Wexford, the Illinois State Police and the Medical Examiner's office of Livingston County as well as the IDOC Report of Investigation and Psychological Autopsy relating to Adam Harrison's death and his medical and psychiatric care history over the time leading up to his death on November 7, 2015.

During his time at Pontiac Correctional Center, Adam Harrison was under the care of Wexford Health Sources, Inc., and its employees and agents, including Dr. Michael Dempsey, Dr. Dragoslav Gvozdjan and LCSW Brook Thomas for his psychological and psychiatric conditions. Adam was known to be at significant risk of suicide throughout his incarceration, and more specifically after his medication non-renewal from October 19, 2015 to November 7, 2015.

One of the responsibilities of Brook Thomas during here time as Licensed Clinical Social Worker and Mental Health Unit Director responsible for Adam was to provide him with therapy; however, and notwithstanding the severity of his mental health problems, she failed to provide such therapy.

Adam Harrison was prescribed the psychotropic drug Buspar by Dr. Dempsey during 2014 and continuing into 2015. A six-month prescription for Buspar was provided by Dr. Dempsey in April 2015 and Dr. Dempsey noted that Adam was experiencing relief of anxiety from Buspar. Dr. Dempsey saw Adam in April and July of 2015.

When Dr. Dempsey saw Adam on July 7, 2015, he continued Adam's medications and set a schedule for a follow-up visit in 8 weeks. After that time, neither the scheduled appointment nor other rescheduled psychiatric appointments were kept by Dr. Dempsey, Dr. Gvozdjan or other Wexford Health Sources, Inc., personnel. And, additional requests for psychiatric evaluation made by Adam to Brook Thomas and other Wexford employees did not secure him an appointment or necessary evaluation and treatment. During the time period that Adam was not receiving requested and necessary psychiatric services over the late Summer and into the Fall of 2015, Adam was put on two separate crisis watches.

Adam Harrison had two appointments scheduled with Dr. Gvozdjan in October 2015 as his prescription of Buspar was running out and after it had run out; those appointments were not kept and no steps were undertaken by Dr. Gvozdjan to provide for continuation of his psychotropic medication or prescription of alternative medication, or to see that Adam Harrison's psychiatric needs were being met given the severity of his mental illness, *requests he had made for psychiatric evaluation, and additional significant stressors and issues in his life including planning for discharge from Pontiac, the anniversary of his father's death and past suicide attempts and crisis watches.*

Exhibit # 2

On October 5, 2015 and November 1, 2015, Adam Harrison was seen by Brook Thomas for the purpose of a suicide assessment, at which time, she performed cursory, incomplete and inadequate assessments.

Adam's Buspar prescription expired on October 19, 2015, without his receiving a psychiatric evaluation, consultation or planning for the discontinuation of the medication. Adam was not seen by Dr. Gvozdjan for a scheduled appointment on October 27, 2015.

On November 5, 2015, Adam Harrison was seen by LCSW and Mental Health Unit Director Brook Thomas on referral by a Superintendent because he had seemed uncharacteristically anxious. His mood was noted by Ms. Thomas to be anxious and he expressed concerns about his upcoming release and asked to see a psychiatrist because his medications had stopped. Adam was told that he would be referred to a psychiatrist. This visit with Ms. Thomas was not documented until November 9, 2015, and the psychiatrist referral was not made prior to Adam's death. Adam last requested to another Mental Health Professional that he be seen by a psychiatrist on November 6, 2015.

On November 7, 2015, Adam Harrison was found dead in his cell. The autopsy report attributed Adam's death to "suffocation due to a plastic bag, towel, and jumpsuit wrapped around the head."

I am of the opinion, based upon a reasonable degree of medical certainty, that there is a reasonable and meritorious basis for bringing a cause of action against Wexford Health Sources, Inc., with respect to the mental health, psychological, psychiatric and medical evaluation, care and treatment of Adam Harrison.

The care provided by Wexford Health Sources, Inc., by and through its employees, and agents, including but not limited to, LCSW Brook Thomas, Dr. Dragoslav Gvozdjan, and Dr. Michael Dempsey deviated from the standard of care in the following respects:

A.    As to LCSW Brook Thomas:

- Failed to manage care of a patient such that he was receiving necessary psychiatric evaluation and treatment;
- Failed to monitor psychotropic drug prescriptions and ensure that such prescriptions are not discontinued without involvement of psychiatrists in evaluation, counseling and planning;
- Failed to conduct proper suicide risk assessments of Adam Harrison;
- Failed to take actions necessary for the protection of Adam Harrison commensurate with his suicide risk factors;
- Failed to respond to Adam Harrison's repeated requests to see a psychiatrist by arranging for a psychiatrist appointment;
- Failed to provide therapy for Adam Harrison; and
- Failed to document and provide for follow-up psychiatric care deemed necessary and for which Adam was told he would be referred two days prior to his death.

B.    As to Dr. Dragoslav Gvozdjan:

- Failed to properly manage the condition and care of a patient for whom he was responsible to provide psychiatric care;
- Allowed discontinuation of a patient's psychotropic medication without taking appropriate steps to ensure either continuation of medication or evaluation for prescription of alternative appropriate medication;
- Failed to take responsibility for assessment and monitoring of the condition of a psychiatric patient;
- Failed to see a patient for scheduled psychiatric appointments and to exercise clinical judgment in rescheduling; and
- Failed to appropriately respond to requests for services by a psychiatric patient for whom he was responsible to provide psychiatric care.

C.    As to Dr. Michael Dempsey

- Failed to properly manage the condition and care of a psychiatric patient;
- Failed to properly designate Adam Harrison as Seriously Mentally Ill commensurate with his condition and psychiatric care needs;
- Failed to provide psychiatric evaluation necessary for continuation or modification of prescribed psychotropic medication; and
- Failed to appropriately monitor the condition of a patient under his psychiatric care, for whom he had prescribed psychotropic medication.

It is my opinion that negligence occurred in the course of medical treatment of Adam Harrison by Wexford Health Sources, Inc. Adam Harrison sustained injuries and damages due to one or more of the foregoing deviations from the standard of care resulting in deterioration of his psychiatric condition and medical condition leading up to and including being a contributing cause of Adam Harrison's death.

A.E. Daniel, M.D.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Joyce Harrison, as independent administrator of the Estate of Adam Harrison, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 17 cv 1383 |
| Wexford Health Sources, Inc., Michael Dempsey, MD, et al., | ) ) ) | |
| Defendants. | ) ) | JURY DEMAND |

**ATTORNEY AFFIDAVIT**
**Pursuant to 735 ILCS 5/2-622**

Mark Parts, an attorney for the Plaintiff, having been sworn upon oath, states as follows:

1.      I have consulted and reviewed the facts of this case with a physician who is licensed to practice medicine in all its branches, who has maintained an active psychiatry practice and has practiced in the field within the past six years, and who has been practicing medicine for more than ten years.  I reasonably believe that this physician is knowledgeable as to the relevant issues involved in this action, has practiced within the last six years in the medical field involved in this case, and is qualified by experience and training to render opinions herein.

2.      The reviewing health professional has determined, as reflected in a written report, after review of medical records and other relevant material pertaining to this case, that there is a reasonable and meritorious cause for the filing of this Second Amended Complaint against Dr. Michael Dempsey.

3.      I have concluded, on the basis of the health professional's review and consultation, that there is reasonable and meritorious cause for the filing the Second Amended Complaint in this lawsuit against Dr. Michael Dempsey.

4.      A copy of the written report of the reviewing health professional referred to herein is attached to this affidavit.

FURTHER AFFIANT SAYETH NOT.

SUBSCRIBED and SWORN before me
this _13th_ day of _November_, 2019.

_____
NOTARY PUBLIC

OFFICIAL SEAL
FAITH SPENCER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/15/21

Exhibit # 3

MEDICAL REPORT

I am a physician licensed to practice medicine in the State of Missouri and I have been practicing medicine for more than 10 years. Since completing a residency in psychiatry in 1977, I have maintained an active psychiatry practice, and accordingly I have practiced within the field of psychiatry within the last 6 years.

I have reviewed records of IDOC, Pontiac Correctional Center ("Pontiac"), Wexford, the Illinois State Police and the Medical Examiner's office of Livingston County as well as the IDOC Report of Investigation and Psychological Autopsy relating to Adam Harrison's death and his medical and psychiatric care history over the time leading up to his death on November 7, 2015.

During his time at Pontiac Correctional Center, Adam Harrison was under the care of Wexford and its employee and/or agent Dr. Michael Dempsey for his psychiatric conditions. Adam was known to be at significant risk of suicide throughout his incarceration.

Adam Harrison was prescribed the psychotropic drug Buspar during 2014 and continuing into 2015. A six-month prescription for Buspar was provided by Dr. Dempsey in April 2015 and Dr. Dempsey noted that Adam was experiencing relief of anxiety from Buspar. Dr. Dempsey saw Adam in April and July of 2015.

When Dr. Dempsey saw Adam on July 7, 2015, he continued Adam's medications and set a schedule for a follow-up visit in 8 weeks. Dr. Dempsey was on duty at Pontiac as Adam came due for the psychiatric appointment; however, he did not have an appointment with Adam. During the time period that Adam was not receiving requested and necessary psychiatric services over the late Summer and into the Fall of 2015, Adam was put on two separate crisis watches. Adam's Buspar prescription expired on October 19, 2015, without his receiving a psychiatric appointment or an evaluation as to either a continuing prescription of his Buspar or a prescription of an alternative medication.

Additionally, over the course of Dr. Dempsey's responsibility for Adam as a psychiatrist, he failed to properly classify Adam as Seriously Mentally Ill ("SMI"), despite Adam's acute mental instability, numerous crisis watches, suicidal gestures and suicidal attempts, which would have resulted in a higher level of care appropriate for Adam's condition and necessary for his well-being.

On November 7, 2015, Adam Harrison was found dead in his cell. The autopsy report attributed Adam's death to "suffocation due to a plastic bag, towel, and jumpsuit wrapped around the head."

I am of the opinion, based upon a reasonable degree of medical certainty, that there is a reasonable and meritorious basis for bringing a cause of action against Dr. Michael Dempsey with respect to psychiatric and medical evaluation, care and treatment of Adam Harrison.

Exhibit # 4

The care provided by Dr. Michael Dempsey to Adam Harrison deviated from the standard of care in the following respects:

- Failed to properly manage the condition and care of a psychiatric patient;
- Failed to properly designate Adam Harrison as Seriously Mentally Ill commensurate with his condition and psychiatric care needs;
- Failed to provide psychiatric evaluation necessary for continuation or modification of prescribed psychotropic medication; and
- Failed to appropriately monitor the condition of a patient under his psychiatric care, for whom he had prescribed psychotropic medication.

It is my opinion that negligence occurred in the course of medical treatment of Adam Harrison by Dr. Michael Dempsey. Adam Harrison sustained injuries and damages due to one or more of the foregoing deviations from the standard of care resulting in deterioration of his psychiatric condition and medical condition leading up to and including being a contributing cause of Adam Harrison's death.

A.E. Daniel, M.D.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Joyce Harrison, as independent administrator of the Estate of Adam Harrison, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 17 cv 1383 |
| Wexford Health Sources, Inc., et al., | ) ) | JURY DEMAND |
| Defendants. | ) | |

**ATTORNEY AFFIDAVIT**
**Pursuant to 735 ILCS 5/2-622**

Mark Parts, an attorney for the Plaintiff, having been sworn upon oath, states as follows:

1.    I have consulted and reviewed the facts of this case with a physician who is licensed to practice medicine in all its branches, who has maintained an active psychiatry practice and has practiced in the field within the past six years, and who has been practicing medicine for more than ten years. I reasonably believe that this physician is knowledgeable as to the relevant issues involved in this action, has practiced within the last six years in the medical field involved in this case, and is qualified by experience and training to render opinions herein.

2.    The reviewing health professional has determined, as reflected in a written report, after review of medical records and other relevant material pertaining to this case, that there is a reasonable and meritorious cause for the filing of this Second Amended Complaint against Dr. Dragoslav Gvodzjan.

3.    I have concluded, on the basis of the health professional's review and consultation, that there is reasonable and meritorious cause for the filing the Second Amended Complaint in this lawsuit against Dr. Dragoslav Gvodzjan.

4.    A copy of the written report of the reviewing health professional referred to herein is attached to this affidavit.

FURTHER AFFIANT SAYETH NOT.

SUBSCRIBED and SWORN before me
this _17th_ day of _November_, 2019.

NOTARY PUBLIC

OFFICIAL SEAL
FAITH SPENCER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/15/21

Exhibit # 5

MEDICAL REPORT

I am a physician licensed to practice medicine in the State of Missouri and I have been practicing medicine for more than 10 years. Since completing a residency in psychiatry in 1977, I have maintained an active psychiatry practice, and accordingly I have practiced within the field of psychiatry within the last 6 years.

I have reviewed records of IDOC, Pontiac Correctional Center ("Pontiac"), Wexford, the Illinois State Police and the Medical Examiner's office of Livingston County as well as the IDOC Report of Investigation and Psychological Autopsy relating to Adam Harrison's death and his medical and psychiatric care history over the time leading up to his death on November 7, 2015.

During his time at Pontiac Correctional Center, Adam Harrison was under the care of Wexford personnel and was supposed to be evaluated and treated by its employee and/or agent Dr. Dragoslav Gvozdjan for his psychiatric conditions. Adam was known to be at significant risk of suicide throughout his incarceration, and more specifically after his medication non-renewal from October 19, 2015 to November 7, 2015.

Adam Harrison had been prescribed the psychotropic drug Buspar during 2014 and continuing into 2015. A six-month prescription for Buspar was provided by Dr. Michael Dempsey in April 2015 and Dr. Dempsey noted that Adam was experiencing relief of anxiety from Buspar. When Psychiatrist Dr. Dempsey saw Adam in July of 2015, he continued Adam's Buspar prescription and prescribed a scheduled follow-up psychiatric visit in 8 weeks. After that time, neither the scheduled appointment nor other rescheduled psychiatric appointments were kept by Dr. Dempsey, Dr. Gvozdjan or other Wexford psychiatric personnel. Adam Harrison had two appointments scheduled with Dr. Gvozdjan in October 2015 as his prescription of Buspar was running out and after it had run out; those appointments were not kept and no steps were undertaken by Dr. Gvozdjan to provide for continuation of his psychotropic medication or prescription of alternative medication, or to see that Adam Harrison's psychiatric needs were being met given the severity of his mental illness, requests he had made for psychiatric evaluation, and additional significant stressors and issues in his life including planning for discharge from Pontiac, the anniversary of his father's death and past suicide attempts and crisis watches.

Adam's Buspar prescription expired on October 16, 2015 and he received his last dose on October 19, 2015, without his receiving a psychiatric evaluation, consultation or planning for the discontinuation of the medication. Adam continued to request psychiatric evaluation and care through October and early November 2015 but did not receive it.

On November 7, 2015, Adam Harrison died in his cell; the autopsy report attributed Adam's death to "suffocation due to a plastic bag, towel, and jumpsuit wrapped around the head."

*I am of the opinion, based upon a reasonable degree of medical certainty, that there is a reasonable and meritorious basis for bringing a cause of action against Dr. Dragoslav*

Exhibit # 6

Gvozdjan with respect to psychiatric and medical evaluation, care and treatment of Adam Harrison.

The conduct of Dr. Dragoslav Gvozdjan with respect to Adam Harrison deviated from the standard of care in the following respects:

- Failed to properly manage the condition and care of a patient for whom he was responsible to provide psychiatric care;
- Allowed discontinuation of a patient's psychotropic medication without taking appropriate steps to ensure either continuation of medication or evaluation for prescription of alternative appropriate medication;
- Failed to take responsibility for assessment and monitoring of the condition of a psychiatric patient;
- Failed to see a patient for scheduled psychiatric appointments and to exercise clinical judgment in rescheduling; and
- Failed to appropriately respond to requests for services by a psychiatric patient for whom he was responsible to provide psychiatric care.

It is my opinion that negligence occurred in the course of medical treatment of Adam Harrison by Dr. Dragoslav Gvozdjan. Adam Harrison sustained injuries and damages due to one or more of the foregoing deviations from the standard of care resulting in deterioration of his psychiatric condition and medical condition leading up to and including being a contributing cause of Adam Harrison's death.

A.E. Daniel, M.D.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Joyce Harrison, as independent administrator of the Estate of Adam Harrison, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 17 cv 1383 |
| Wexford Health Sources, Inc., et al., | ) ) | JURY DEMAND |
| Defendants. | ) | |

**ATTORNEY AFFIDAVIT**
**Pursuant to 735 ILCS 5/2-622**

Mark Parts, an attorney for the Plaintiff, having been sworn upon oath, states as follows:

1.     I have consulted and reviewed the facts of this case with a physician who is licensed to practice medicine in all its branches, who has maintained an active psychiatry practice and has practiced in the field within the past six years, and who has been practicing medicine for more than ten years. I reasonably believe that this physician is knowledgeable as to the relevant issues involved in this action, has practiced within the last six years in the medical field involved in this case, and is qualified by experience and training to render opinions herein.

2.     The reviewing health professional has determined, as reflected in a written report, after review of medical records and other relevant material pertaining to this case, that there is a reasonable and meritorious cause for the filing of this Second Amended Complaint against Brook Thomas.

3.     I have concluded, on the basis of the health professional's review and consultation, that there is reasonable and meritorious cause for the filing the Second Amended Complaint in this lawsuit against Brook Thomas.

4.     A copy of the written report of the reviewing health professional referred to herein is attached to this affidavit.

FURTHER AFFIANT SAYETH NOT.

SUBSCRIBED and SWORN before me
this _13th_ day of _November_, 2019.

_____
NOTARY PUBLIC

OFFICIAL SEAL
FAITH SPENCER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION  RES:12/15/21

Exhibit # 7

MEDICAL REPORT


I am a physician licensed to practice medicine in the State of Missouri and I have been practicing medicine for more than 10 years. Since completing a residency in psychiatry in 1977, I have maintained an active psychiatry practice, and accordingly I have practiced within the field of psychiatry within the last 6 years.

I have reviewed records of IDOC, Pontiac Correctional Center ("Pontiac"), Wexford, the Illinois State Police and the Medical Examiner's office of Livingston County as well as the IDOC Report of Investigation and Psychological Autopsy relating to Adam Harrison's death and his medical and psychiatric care history over the time leading up to his death on November 7, 2015.

During his time at Pontiac Correctional Center leading up to his death, Adam Harrison was under the care of Wexford personnel and management and coordination of that care was a responsibility of Licensed Clinical Social Worker and Mental Health Unit Director Brook Thomas with respect to his psychological and psychiatric conditions. Adam was known to be at significant risk of suicide throughout his incarceration, and more specifically after his medication non-renewal from October 19, 2015 to November 7, 2015.

Over the time that Adam Harrison was at Pontiac, Brook Thomas was his Licensed Clinical Social Worker and Mental Health Unit Director beginning in the Summer of 2015 and there were Psychiatrists including Dr. Michael Dempsey and Dr. Dragoslav Gvozdjan assigned to provide psychiatric services at Pontiac. Adam Harrison was prescribed the psychotropic drug Buspar during 2014 and continuing into 2015. A six-month prescription for Buspar was provided by Dr. Dempsey in April 2015 and Dr. Dempsey noted that Adam was experiencing relief of anxiety from Buspar. Dr. Dempsey saw Adam in April and July of 2015.

When Dr. Dempsey saw Adam on July 7, 2015, he continued Adam's medications and set a schedule for a follow-up visit in 8 weeks. After that time, neither the scheduled appointment nor other rescheduled psychiatric appointments were kept by Dr. Dempsey, Dr. Gvozdjan or other Wexford personnel. And, additional requests for psychiatric evaluation made by Adam to Brook Thomas and others did not secure him an appointment or necessary psychiatric evaluation and treatment. During the time period that Adam was not receiving requested and necessary psychiatric services over the late Summer and into the Fall of 2015, Adam was put on two separate crisis watches.

Adam's Buspar prescription expired on October 16, 2015 and he received his last dose on October 19, 2015, without his receiving a psychiatric evaluation, consultation or planning for the discontinuation of the medication. Adam was without his prescribed psychotropic medication for 19 days prior to his death on November 7, 2015. Adam continued to request psychiatric evaluation and care through October and early November 2015 but did not receive it. Over the Fall of 2015 Adam Harrison repeatedly requested an appointment with a psychiatrist concerning medications, but he did not ever have appointment with a psychiatrist that he requested.

Exhibit # 8

On October 5, 2015 and November 1, 2015, Adam Harrison was seen by Brook Thomas for the purpose of a suicide assessment, at which time, she performed cursory, incomplete and inadequate assessments.

One of the responsibilities of Brook Thomas during her time as Licensed Clinical Social Worker and Mental Health Unit Director responsible for Adam was to provide him with therapy; however, and notwithstanding the severity of his mental health problems, she failed to provide such therapy.

On November 5, 2015, Adam Harrison was seen by LCSW and Mental Health Unit Director Brook Thomas on referral by a Superintendent because he had seemed uncharacteristically anxious. His mood was noted by Ms. Thomas to be anxious and he expressed concerns about his upcoming release and asked to see a psychiatrist because his medications had stopped. Adam was told that he would be referred to a psychiatrist. This visit with Ms. Thomas was not documented until November 9, 2015, and the psychiatrist referral was not made prior to Adam's death.

On November 7, 2015, Adam Harrison died in his cell; the autopsy report attributed Adam's death to "suffocation due to a plastic bag, towel, and jumpsuit wrapped around the head."

I am of the opinion, based upon a reasonable degree of medical certainty, that there is a reasonable and meritorious basis for bringing a cause of action against Mental Health Unit Director Brook Thomas with respect to her role in providing for mental health evaluation, care, treatment and care management of Adam Harrison.

The conduct of Licensed Clinical Social Worker and Mental Health Unit Director Brook Thomas to Adam Harrison deviated from the standard of care in the following respects:

- Failed to manage care of a patient such that Adam Harrison was receiving necessary psychiatric evaluation and treatment;
- Failed to monitor psychotropic drug prescriptions and ensure that such prescriptions are not discontinued without involvement of a psychiatrist in evaluation, counseling and planning;
- Failed to conduct proper suicide risk assessments of Adam Harrison;
- Failed to take actions necessary for the protection of Adam Harrison commensurate with his suicide risk factors;
- Failed to respond to Adam Harrison's repeated requests to see a psychiatrist by arranging for a psychiatrist appointment;
- Failed to provide therapy for Adam Harrison; and
- Failed to document and provide for follow-up psychiatric care deemed necessary and for which Adam was told he would be referred two days prior to his death.

It is my opinion that negligence occurred in the course of care and treatment of Adam Harrison by Mental Health Unit Director Brook Thomas. Adam Harrison sustained injuries and damages due to one or more of the foregoing deviations from the standard of

care resulting in deterioration of his psychiatric condition and medical condition leading up to and including being a contributing cause of Adam Harrison's death.

A.E. Daniel, M.D.